UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

_____x

MASHA KOSSIVI,                                    Civ. No. 25-cv-06397-PKC

        Plaintiff,

     -against-                                **AMENDED VERIFIED COMPLAINT**

CITY OF NEW YORK, former CAPTAIN
MIGUEL MARTINEZ, SUPREVISOR
MICHAEL HINES, SGT. VRIJESHKUMAR
PATEL  JOHN DOES #1-5 and JANE DOES
#1-5,

        Defendants.                            Jury Trial Demanded

_____x

     Plaintiff MASHA KOSSIVI, by and through her undersigned counsel, for her Complaint

against the above-named Defendants, alleges as follows:

## NATURE OF THE CASE

1.     This is an action to remedy discrimination based on race, ethnicity, national

origin, and gender, and an unlawful and hostile work environment pursuant to the provisions of

the Civil Rights Act of 1866, 42 U.S.C. § 1981, as amended by the Civil Rights Act of 1991

("Section 1981"), and pursuant to Article 1, § 11 of the New York State Constitution for the

violation of Plaintiff's due process and other constitutional rights to be free from discrimination,

including discrimination based on race, ethnic background, and national origin, and gender.

2.     This is also an action in which the Plaintiff seeks relief from Defendants'

violation, under color of state law, of her rights, privileges and immunities secured by the Civil

Rights Act of 1861, 42 U.S.C. § 1983, the First, Fourth, Fifth, and Fourteenth Amendments to the

United States Constitution and the laws of the State of New York.

3.      Further, this action seeks relief under the New York State and New York City Human Rights Laws.

**PARTIES**

4.      Plaintiff MASHA KOSSIVI, an African American female born in Trinidad and Tobago, has been a police officer with the Defendant New York City Police Department since February 21, 2022. During the relevant time period, Plaintiff worked within the New York City Department of Homeless Services ("DHS") from offices located on Randall's Island, New York. She also worked closely with the 25th Precinct of the New York City Police Department.

5.      Defendant THE CITY OF NEW YORK is a municipal corporation, incorporated in the State of New York, and encompasses all five boroughs of New York City. The causes of action in this case arise in the City of New York.

6.      Defendant former CAPTAIN MIGUEL MARTINEZ was Plaintiff's commanding officer during the relevant time period.

7.      Defendant SUPERVISOR MICHAEL HINES was Plaintiff's supervisor during the relevant time period.

8.      Defendant SGT. VRIJESHKUMAR PATEL would regularly order Plaintiff to come to the Command Room. He would then instruct Plaintiff to go to Captain Martinez's office, knowing that Captain Martinez wanted her in his office for sexual services or other improper reasons.

9.      Defendants' John Does #1-5 and Jane Does #1-5 were police officers whose identities are currently unknown, who aided and abetted Defendants' bullying and harassment, and who helped create the hostile work environment to which Plaintiff was exposed.

2

## JURISDICTION

10.     Jurisdiction of this Court is proper under 42 U.S.C. § 2000e-5(f)(3), 28 U.S.C. §§ 1331, the Civil Rights Act of 1866 and 1871, and 28 USC § 1331. and the amount in controversy exceeds $75,000. This Court also has subject matter jurisdiction on the basis of there being a federal question relating to the U.S. Constitution, and on the basis of there being a federal question relating to 42 U.S.C. § 1983.

11.     Venue is proper under 28 U.S.C. § 1391(b) and 18 U.S.C. § 1965(a), as Defendants' actions giving rise to the claims occurred in this District.

12.     This Court has supplemental jurisdiction to hear and decide relevant causes of action arising under the laws of the State of New York.

## JURY DEMAND

13.     Plaintiff hereby demands a trial by jury on all issues so triable.

## RELEVANT FACTS

14.     During the entire time period that Plaintiff worked at the Randall's Island facility, starting in late May or early June 2022, she was subjected to an extremely hostile work environment. She was bullied, harassed, manipulated and otherwise discriminated against by the individual Defendants, as well as fellow police officers and supervisors. Plaintiff was made the butt of crude jokes, gossip and false rumors, which her supervisors knew was going on, but did nothing to stop.

15.     Defendant Captain Martinez demanded sexual favors from Plaintiff, coercing her to comply with his sexual demands based not only as her commanding officer, but also as the one who—as he often reminded her—was the person who would decide whether and when her probationary period would end, and whether she would be entitled to be a full-fledged police

officer. Defendant Martinez's conduct was directed at Plaintiff because she is a woman subordinate officer under his command, and male officers were not subjected to similar sexual coercion, abuse, or exploitation.

16.    Defendant Martinez demanded that Plaintiff take him out for lunch and/or dinner, and then demanded that Plaintiff pay for it. On one occasion, Plaintiff paid for an Uber to take Defendant Martinez to a restaurant located in the Riverdale section of the Bronx, where Plaintiff was told to meet him. When they got there, Defendant Martinez told Plaintiff to order and pay for drinks for them. When she said that she did not drink, he banged his fist on the table and ordered her to drink multiple alcoholic beverages. He ordered her to keep drinking until she felt sick. When the bill was paid for by her credit card, Defendant Martinez drove her to her apartment in her car, since she was too drunk and too sick to drive. Defendant Martinez then raped the Plaintiff in the back seat of the car, ripping her pants and underwear in the process. After zipping up his pants, Defendant Martinez took Plaintiff's phone, held it up to her face, and demanded that she order an Uber for him.

17.    When Plaintiff finally made it home, her partner said, "You stink of alcohol." She was in too much shock to talk about it, so she curled up in a ball next to him and fell asleep. Plaintiff later made a police report at her local precinct on December 7, 2022.

18.    Thereafter, Defendant Martinez insisted that she come to his home on a weekly basis to have sex. On her first visit there, he pulled a gun on her and told her to "be careful," so he "would not get upset."

19.    Defendant Martinez repeatedly forced Plaintiff to come to his office on Randall's Island and have sex with him by having defendant Supervisor Michael Hines, Defendant Sgt. Patel and other call her over the work portable phones to come to the Command Center, and then

when she arrived there, she was told to go Captain Martinez's office. It became widely known that Defendant Martinez was improperly taking sexual advantage of Plaintiff, and yet nothing was done to stop him from doing so. Defendants Hines and Patel knew that Plaintiff was being sexually exploited by Martinez, knew that their actions facilitated that exploitation, and nevertheless continued to summon Plaintiff to Martinez's office. At all relevant times, Defendants Hines and Patel were acting within the scope of their supervisory authority and duties, and had the power and duty to prevent, report, or stop the sexual abuse and harassment, but instead chose to facilitate it. Defendants Hines and Patel took these actions with knowledge that Plaintiff was being targeted for sexual exploitation because she was a female subordinate officer, and their conduct contributed directly to the continuation of that sex-based hostile work environment.

20.    Throughout the relevant period, multiple supervisory and non-supervisory officers assigned to Randall's Island, Ward's Island, and other DHS facilities were aware that Plaintiff was being sexually harassed, coerced, and mistreated by supervisory personnel. Several officers, including a female Sergeant assigned to DHS during the relevant period ("Confidential Witness No. 1"),  personally observed Plaintiff visibly distressed, fearful, and attempting to avoid contact with a supervisory officer who had made unwelcome sexual advances toward her. Confidential Witness No. 1 observed Plaintiff hiding in an office to avoid Defendant Martinez and witnessed Plaintiff leave the office in a visibly shaken and upset state.

21.    Other officers assigned to Randall's Island during Plaintiff's tenure observed Plaintiff being treated materially worse than other officers, heard supervisors speak about Plaintiff in a degrading and hostile manner, and understood that Plaintiff was being singled out

and ostracized because she was perceived as vulnerable and unwilling to comply with sexual demands.

22.    Multiple officers and supervisors were informed directly that Plaintiff was being subjected to sexual coercion, bullying, and abuse of authority, yet no meaningful action was taken to investigate, document, or stop the misconduct. Several officers advised Plaintiff to remain silent, keep a low profile, or refrain from reporting what was happening to her out of concern for her safety and career. Plaintiff was warned that speaking out would worsen her treatment and place her at risk. Supervisors observed Plaintiff break down emotionally at work, withdraw from colleagues, and seek assistance through employee support resources, yet still failed to initiate protective or corrective measures.

23.    Upon information and belief, Plaintiff was not the only female officer subjected to sexual harassment, exploitation, or hostile treatment within the DHS-NYPD assignments at Randall's Island and Ward's Island. Officers with longstanding tenure at those commands were aware of a pattern of female officers being harassed, discouraged from reporting misconduct, or leaving the assignment altogether due to sexual harassment and retaliation. Supervisory personnel knew of these issues, discussed them openly among themselves, and nevertheless failed to discipline offending officers or implement safeguards. This widespread knowledge, combined with repeated inaction, created and reinforced a custom and practice of tolerating sexual misconduct, silencing complaints, and retaliating against those perceived as troublemakers. That custom was the moving force behind the violations of Plaintiff's rights and allowed the abuse she suffered to persist over an extended period. These facts demonstrate a widespread and well-known pattern of sexual misconduct and retaliation that supervisory personnel tolerated and failed to correct.

## COUNT I
### (Violations of 42 U.S.C § 1981)

24.    Plaintiff repeats and re-alleges each of the foregoing allegations of this Complaint as if fully set forth herein.

25.    Defendants violated Section 1981 by subjecting Plaintiff to a pattern and practice of discrimination and hostile work environment based on race, ethnicity and national origin. The hostile work environment to which Plaintiff was subjected was so severely permeated with discriminatory intimidation, sexual harassment, ridicule and insults that the terms and conditions of employment were altered. Plaintiff brings this claim pursuant to 42 U.S.C. § 1983 as the remedial vehicle for violations of 42 U.S.C. § 1981 by state actors.

26.    As a direct and proximate result of Defendants' unlawful conduct in violation of Section 1981, Plaintiff has suffered and continues to suffer monetary and/or economic damages, and severe emotional distress and mental anguish, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering for which she is entitled to an award of monetary damages and other relief.

27.    Defendants' unlawful conduct constitutes a willful and wanton violation of Section 1981, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

## COUNT II
### (Violations of 42 U.S.C. § 1983)

28.    Plaintiff repeats and re-alleges each of the foregoing allegations of this Complaint as if fully set forth herein.

7

29.    Defendants violated Section 1983, since they were acting under color of state law when they deprived Plaintiff of her constitutional rights.

30.    Defendants' unlawful conduct, including the creation of a hostile work environment involving bullying, the spreading of false rumors, sexual harassment, and rape, was the direct cause of Plaintiff's damages, including, but not limited to, depression, humiliation, embarrassment, stress and anxiety, loss of self-esteem and self-confidence, and emotional pain and suffering. Defendants' conduct further constituted intentional discrimination on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment, including through quid pro quo sexual harassment, sexual assault, and the creation of a hostile work environment.

31.    Defendants' unlawful conduct constitutes a willful and wanton violation of Plaintiff's constitutional rights, including her rights under the Equal Protection Clause of the Fourteenth Amendment, was outrageous and malicious, was intended to injure Plaintiff, and was done with conscious disregard of Plaintiff's civil rights, entitling Plaintiff to an award of punitive damages.

**COUNT III**
**(Municipal Liability Under 42 U.S.C. § 1983 –**
**Monell Claim Against Defendant City of New York)**

32.    Plaintiff repeats and realleges each and every allegation set forth in the foregoing paragraphs as if fully set forth herein.

33.    At all relevant times, Defendant City of New York, through the NYPD and the DHS, acted under color of law and pursuant to official policies, customs, and/or practices that deprived Plaintiff of her constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution.

34.    Upon information and belief, Defendant City of New York had a de facto policy, custom, or practice of, among other examples: (a) tolerating and failing to prevent sexual harassment and coercion by superior officers; (b) failing to properly investigate or discipline known or suspected misconduct by officers, including complaints of sexual abuse and workplace violence; (c) permitting or encouraging an environment of silence, retaliation, and intimidation toward officers who report sexual harassment or abuse; and (d) failing to supervise, train, or monitor NYPD personnel deployed to DHS facilities, including the Randall's Island facility, despite prior incidents and known risks.

35.    These unconstitutional policies, customs, and practices were the moving force behind the constitutional violations suffered by Plaintiff, including sexual assault, coercion, harassment, and retaliation, all while Plaintiff was employed as a probationary officer with the NYPD. These policies and customs directly caused Plaintiff's injuries by allowing Martinez's conduct to continue unchecked over an extended period of time despite widespread knowledge within the command structure.

36.    Defendant City of New York failed to adequately train and supervise Captain Miguel Martinez and other supervisory staff, despite clear warning signs and widespread knowledge within the command structure that Martinez was engaging in inappropriate and coercive conduct toward Plaintiff.

37.    Despite having the authority and obligation to investigate, discipline, and remove personnel who posed a threat to subordinate officers, Defendant City of New York ignored clear evidence of abuse, thereby ratifying and enabling the continuation of the misconduct.

38.    The failure of the City to take reasonable steps to prevent or remedy the hostile work environment and sexual abuse amounted to deliberate indifference to Plaintiff's constitutional rights and proximately caused the harm she suffered.

39.    As a direct and proximate result of the aforementioned policies, practices, and customs of Defendant City of New York, Plaintiff suffered severe and ongoing emotional distress, humiliation, degradation, and other damages as alleged herein.

40.    Plaintiff is entitled to compensatory damages, and because the conduct of the City's policymakers was reckless, willful, and in conscious disregard of her rights, she is further entitled to an award of punitive damages, attorneys' fees, and costs.

## COUNT IV
### (Violations of NYSHRL and NYCHRL – Hostile and Abusive Working Environment)

41.    Plaintiff repeats and realleges each and every of the foregoing paragraphs of this Complaint as though fully set forth herein.

42.    The workplace where Plaintiff was required to work was permeated with such severe and pervasive discriminatory harassment, intimidation, ridicule and insult that it altered the conditions of plaintiff's employment and created a hostile and abusive working environment, in violation of the New York State Human Rights Law, Executive Law §290 *et seq.* ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of City of NY§ 8-101 *et seq.* ("NYCHRL").

43.    Defendants were aware at all times of Plaintiff's severe and persistent exposure to a hostile and abusive working environment throughout her period of

employment with the NYPD because they directly witnessed, supervised and participated in wrongful conduct subjecting Plaintiff to severe and persistent exposure to a hostile and abusive working environment at all relevant periods hereunder.

44.      As a result of the severe and persistent exposure to a hostile and abusive working environment, Plaintiff suffered damages in an amount to be determined at trial.

## COUNT V
### (Violations of NYSHRL and NYCHRL –
### Sex/Gender Discrimination, Sexual Harassment, and Quid Pro Quo Harassment)

45.      Plaintiff repeats and realleges each and every of the foregoing paragraphs of this Complaint as though fully set forth herein.

46.      At all relevant times, Plaintiff was an employee within the meaning of the NYSHRL and NYCHRL, and Defendants were employers and/or agents thereof within the meaning of those statutes.

47.      Defendants discriminated against Plaintiff because of her sex and gender by subjecting her to unwelcome sexual conduct, sexual coercion, and sexual assault, including quid pro quo harassment, in which Defendant Martinez demanded sexual acts from Plaintiff as a condition of her continued employment, favorable treatment, and successful completion of her probationary period.

48.      Defendant Martinez's conduct constituted unlawful sex-based discrimination and sexual harassment under the NYSHRL and NYCHRL, including but not limited to repeated sexual demands, forced intoxication, rape, threats of violence, and ongoing compelled sexual encounters, all of which occurred within the context of Plaintiff's employment.

49.      Defendants Hines and Patel aided, abetted, facilitated, and participated in this unlawful discrimination and harassment by knowingly summoning Plaintiff to Martinez's office

11

for the purpose of sexual exploitation, and by failing to intervene or take corrective action despite actual knowledge of the ongoing abuse.

50.    Plaintiff was treated less well than other employees because of her sex and gender, and male officers were not subjected to similar sexual coercion, abuse, or exploitation.

51.    Defendants' conduct was severe, pervasive, and objectively offensive, and independently actionable under the NYCHRL, which requires only that Plaintiff was treated less well because of her sex, and under the NYSHRL, which prohibits subjecting an employee to inferior terms, conditions, or privileges of employment because of sex.

52.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiff suffered substantial damages, including emotional distress, humiliation, psychological trauma, loss of professional standing, and other damages to be determined at trial.

53.    Defendants' actions were willful, wanton, reckless, and in conscious disregard of Plaintiff's rights, entitling Plaintiff to compensatory damages, punitive damages as permitted by law, attorneys' fees, costs, and such other relief as the Court deems just and proper.

WHEREFORE, Plaintiff demands judgment against defendants for compensatory and punitive damages in an amount to be determined at trial; and such other and further relief as this Court seems just and proper, together with costs, interest and disbursements of this action, and reasonable attorneys' fees.

Dated: New York, New York
      January 16, 2026

    McCALLION & ASSOCIATES LLP
    */s/ Kenneth F. McCallion*
    Kenneth F. McCallion
    Darragh O'Boyle
    100 Park Avenue – 16th Floor
    New York, New York 10017
    (646) 366-0884
    *Attorneys for Plaintiff*

## VERIFICATION

MASHA KOSSIVI hereby affirms and verifies as follows:

1.      I am the Plaintiff in this matter and am fully familiar with its facts and circumstances.

2.   I have read the foregoing Amended Complaint and find that its contents are true and correct, except as to those matters asserted upon information and belief, and as to those matters I believe them to be true and correct.

Dated: New York, New York
      January 16, 2026

                                              MASHA KOSSIVI