UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-----------------------------------------------------------x

MASHA KOSSIVI,

Plaintiff,

25-cv-6397 (PKC)

-against-

OPINION AND ORDER

CITY OF NEW YORK; former CAPTAIN MIGUEL MARTINEZ, SUPERVISOR MICHAEL HINES, SGT. VRIJESHKUMAR PATEL; JOHN DOES #1-5 and JANE DOES #1-5,

Defendants.

-----------------------------------------------------------x

CASTEL, U.S.D.J.

Plaintiff Masha Kossivi is an officer of the New York City Police Department ("NYPD") who worked at a Randall's Island facility for the New York City Department of Homeless Services ("DHS"). Kossivi, an African-American woman born in Trinidad and Tobago, alleges she was discriminated against and subject to a hostile work environment on account of her race, ethnicity, national origin, and gender. She also alleges that Captain Miguel Martinez sexually exploited her, coerced her into complying with his sexual demands, and, on one occasion, raped her.

Kossivi's First Amended Complaint ("FAC") asserts multiple claims against defendants Martinez, "Supervisor" Michael Hines, Sergeant Vrijeshkumar Patel, and the City of New York (the "City"). She brings these claims, against one or more defendants, under section 1983 for violations of her rights under the First, Fourth, Fifth, and Fourteenth Amendments to the United States Constitution. She also asserts claims under section 1981 and state and city human rights laws.

Hines and Patel move to dismiss the section 1983 claim against them alleging a violation of the Equal Protection Clause. The City moves to dismiss all section 1983 claims against it for failure to state a plausible Monell claim. Hines, Patel, and the City move to dismiss the section 1981 claim against them for failure to plausibly allege that any of their actions were motivated on account of Kossivi's race, ethnicity, or national origin. The Court will deny Hines's and Patel's motion to dismiss the section 1983 claims against them, grant the City's motion to dismiss the section 1983 claims against it, and grant all the moving defendants' motion to dismiss the section 1981 claims. Kossivi's New York State Human Rights Law ("NYSHRL") and New York City Human Rights Law ("NYCHRL") claims against the moving defendants will survive, except insofar as they can be construed to allege a hostile work environment or discrimination on the basis of race, ethnicity, or national origin.

## BACKGROUND

For purposes of the motion, the Court accepts the Complaint's well-pleaded allegations as true and draws all reasonable inferences in favor of the non-movant plaintiffs. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009); In re Elevator Antitrust Litigation, 502 F.3d 47, 50 (2d Cir. 2007).

As noted, Kossivi is an African American woman born in Trinidad and Tobago. (ECF 28 ¶ 4.) She has been an NYPD officer since February 21, 2022, and worked within the DHS from offices on Randall's Island. (Id.) She also "worked closely with" the 25th Precinct of the NYPD. (Id.)

Shortly after she began working at the Randall's Island facility in May or early June 2022, Kossivi alleges that she was bullied, harassed, manipulated, and discriminated against by individual defendants and others. (Id. ¶ 14.)

At some point during her time at the Randall's Island facility, Kossivi was allegedly coerced into complying with the sexual demands of Martinez, Kossivi's commanding officer at the time. (Id. ¶ 15.) In one instance, Martinez forced Kossivi to drink alcoholic beverages and then drove her home and raped her. (Id. ¶ 16.) Kossivi made a report of this incident to her local precinct on December 7, 2022. (Id. ¶ 17.)

Following this incident, Martinez insisted that he and Kossivi have sex on a weekly basis at his home. (Id. ¶ 18.) During one of these incidents, he pulled a gun on her and told her to "be careful" so he "would not get upset." (Id.)

Kossivi also alleges that "Martinez repeatedly forced [her] to come to his office on Randall's Island and have sex with him by having [Hines], [Patel] and other [sic] call her over the work portable phones to come to the Command Center," where, "she was told to go to Martinez's office." (Id. ¶ 19.) Kossivi asserts that "Hines and Patel knew that [she] was be sexually exploited by Martinez, knew that their actions facilitated that exploitation, and nevertheless continued to summon [her] to Martinez's office." (Id.)

It became "widely known" that Martinez was "improperly taking sexual advantage" of Kossivi. (Id.) An unnamed female sergeant personally observed Kossivi hiding to avoid Martinez. (Id. ¶ 20.)

Kossivi brings (1) a section 1983 claim against individual defendants alleging they acted under the color of state law in depriving her of rights protected by the Constitution; (2) a section 1981 claim against defendants alleging they subjected her to a pattern and practice

of discrimination and a hostile work environment based on race, ethnicity, and national origin; (3) a section 1983 Monell claim against the City alleging that, through the NYPD and DHS and pursuant to official policies, customs, and/or practices, it deprived her of her constitutional rights; (4) a claim under New York State Human Rights Law, Executive Law § 290 et seq. ("NYSHRL"), and the New York City Human Rights Law, Administrative Code of City of NY § 8-101 et seq. ("NYCHRL"), against defendants, claiming they created a hostile workplace; and (5) another claim under NYSHRL and NYCHRL alleging that individual defendants engaged in sex and gender discrimination, sexual harassment, and quid pro quo harassment.

DISCUSSION

I. Standard on a Motion to Dismiss.

Rule 12(b)(6), Fed. R. Civ. P., requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556). "The plausibility standard . . . asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A sufficient complaint must include non-conclusory factual allegations that move its claims "across the line from conceivable to plausible." Id. at 680 (quoting Twombly, 550 U.S. at 570).

In assessing the sufficiency of a pleading, a court must disregard legal conclusions, which are not entitled to the presumption of truth. Id. at 678. Instead, the Court must examine the well-pleaded factual allegations and "determine whether they plausibly give rise to an entitlement to relief." Id. at 679. "Dismissal is appropriate when 'it is clear from the

face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" Parkcentral Global Hub Ltd. v. Porsche Automobile Holdings SE, 763 F.3d 198, 208-09 (2d Cir. 2014) (quoting Conopco, Inc. v. Roll International, 231 F.3d 82, 86 (2d Cir. 2000)).

## II. The Section 1983 Claim Against Hines and Patel Premised Upon a Violation of the Equal Protection Clause States a Claim.

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988). "Because vicarious liability is inapplicable to . . . [section] 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 676; Raspardo v. Carlone, 770 F.3d 97, 116 (2d Cir. 2014).

While Kossivi generally alludes to a variety of constitutional violations,[1] her section 1983 claim against Hines and Patel only alleges a violation of the Equal Protection Clause of the Fourteenth Amendment. (FAC ¶ 30.) She alleges that defendants' actions "constituted intentional discrimination on the basis of sex in violation of the Equal Protection Clause of the Fourteenth Amendment, including through quid pro quo sexual harassment, sexual assault, and the creation of a hostile work environment." (Id.)

"The Fourteenth Amendment provides public employees with the right to be 'free from discrimination.'" Vega v. Hempstead Union Free Sch. Dist., 801 F.3d 72, 87 (2d Cir.

[1] "Plaintiff seeks relief from Defendants' violation, under color of state law, of her rights, privileges and immunities secured by . . . the First, Fourth, Fifth, and Fourteenth Amendments . . . ." (FAC ¶ 2.)

2015) (quoting Demoret v. Zegarelli, 451 F.3d 140, 149 (2d Cir. 2006)). "Consequently, public employees aggrieved by discrimination in the terms of their employment may bring suit under 42 U.S.C. § 1983 against any responsible persons acting under color of state law." Id. (citing Back v. Hastings on Hudson Union Free School Dist., 365 F.3d 107, 122–23 (2d Cir. 2004)).

For an individual defendant to be liable under section 1983, that defendant must be "personally involved" in the deprivation of the plaintiff's rights. Back, 365 F.3d at 127. Personal involvement can be established by showing that the defendant participated directly in the constitutional violation or exhibited deliberate indifference by failing to act on information that the violation was occurring. Littlejohn v. City of New York, 795 F.3d 297, 314 (2d Cir. 2015) (citing Back, 365 F.3d at 127).

Kossivi has plausibly alleged Hines's and Patel's direct personal participation in the constitutional violation. At the behest of Martinez, both Hines and Patel "repeatedly" directed plaintiff to go to the Command Center where they "knew Plaintiff was being sexually exploited by Martinez." (FAC ¶ 19); see Provost v. City of Newburgh, 262 F.3d 146, 155 (2d Cir. 2001) (holding that "'direct participation' as a basis of liability is personal participation by one who has knowledge of the facts that rendered the conduct illegal" (emphasis added)). Kossivi also has shown that Hines and Patel exhibited deliberate indifference by doing nothing to stop Martinez from sexually exploiting her, even as they knew the conduct was occurring. (FAC ¶ 19); see Back, 365 F.3d at 127 ("[D]eliberate indifference can be found when the defendant's response to known discrimination is clearly unreasonable in light of the known circumstances." (quoting Gant ex rel. Gant v. Wallingford Bd. of Educ., 195 F.3d 134, 141 (2d Cir. 1999)) (internal quotations removed) (emphasis added)).

Accordingly, plaintiff has plausibly alleged a claim against Hines and Patel for a violation of the Equal Protection Clause.

## III. The Section 1983 Claim Against the City (Count III) Will Be Dismissed.

Under Monell v. New York City Dep't of Social Services, a municipality "may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents" unless those employees or agents do so in the "execution of [the municipality's] policy or custom." 436 U.S. 658, 694 (1978). To establish a Monell claim, a plaintiff must show that there is "(1) a municipal policy or custom that (2) causes the plaintiff to be subjected to (3) the deprivation of a constitutional right." Agosto v. New York City Dep't of Educ., 982 F.3d 86, 97 (2d Cir. 2020) (citing Batista v. Rodriguez, 702 F.2d 393, 397 (2d Cir. 1983)).

"Official municipal policy includes the decisions of a government's lawmakers, the acts of its policymaking officials, and practices so persistent and widespread as to practically have the force of law." Connick v. Thompson, 563 U.S. 51, 61 (2011). For actions of subordinate municipal employees to give rise to section 1983 liability under Monell, their unconstitutional conduct must be "so manifest as to imply the constructive acquiescence of senior policy-making officials." Sorlucco v. N.Y.C. Police Dep't, 971 F.2d 864, 870–71 (2d Cir. 1992) (citing City of St. Louis v. Praprotnik, 485 U.S. 112, 130 (1988); Krulik v. Bd. of Educ. of the City of N.Y., 781 F.2d 15, 23 (2d Cir. 1986)).

In her Monell claim, Kossivi alleges that the City, through the NYPD and DHS, "acted under color of law and pursuant to official policies, customs, and/or practices that deprived Plaintiff of her constitutional rights under the First, Fourth, Fifth, and Fourteenth Amendments of the United States Constitution." (FAC ¶ 33.)

Martinez's alleged violation of Kossivi's constitutional rights is not, in itself, sufficient to plead a pattern or policy claim. See DeCarlo v. Fry, 141 F.3d 56, 61 (2d Cir. 1998) ("'[A] single incident alleged in a complaint, especially if it involved only actors below the policy making level, does not suffice to show a municipal policy.'" (quoting Ricciuti v. N.Y.C. Transit Auth., 941 F.2d 119, 123 (2d Cir. 1991))); see also Williams v. Freyermuth, No. 23-CV-02156 (PMH), 2025 WL 1369399, at *4 (S.D.N.Y. May 9, 2025) (Halpern, J.) ("Plaintiff cannot establish a Monell claim by alleging [her] own experiences and then extrapolating to [an] entire [] population." (internal quotation marks removed)). While Martinez engaged in this conduct over the course of many months, he is not alleged to be a policymaker.

Kossivi alleges that the City had a policy, custom, or practice of:

> (a) tolerating and failing to prevent sexual harassment and coercion by superior officers; (b) failing to properly investigate or discipline known or suspected misconduct by officers, including complaints of sexual abuse and workplace violence; (c) permitting or encouraging an environment of silence, retaliation, and intimidation toward officers who report sexual harassment or abuse; and (d) failing to supervise, train, or monitor NYPD personnel deployed to DHS facilities, including the Randall's Island facility, despite prior incidents and known risks.

(FAC ¶ 34.)

As factual support for these allegations, Kossivi alleges that:

> Upon information and belief, Plaintiff was not the only female officer subjected to sexual harassment, exploitation, or hostile treatment within the DHS-NYPD assignments at Randall's Island and Ward's Island [sic]. Officers with longstanding tenure at those commands were aware of a pattern of female officers being harassed, discouraged from reporting misconduct, or leaving the assignment altogether due to sexual harassment and retaliation. Supervisory personnel knew of these issues, discussed them openly among themselves, and nevertheless failed to discipline offending officers or implement safeguards. This widespread knowledge, combined with repeated inaction, created and reinforced a custom and practice of tolerating sexual misconduct, silencing complaints, and retaliating against those perceived as troublemakers. That custom was the moving force behind the violations of Plaintiff's rights and allowed the abuse she suffered to persist over an extended period. These facts demonstrate a widespread and

> well-known pattern of sexual misconduct and retaliation that supervisory personnel tolerated and failed to correct.

(Id. ¶ 23.)

These allegations are pled "upon information and belief." No specific instances are alleged to support them. A plaintiff cannot "merely plop 'upon information and belief' in front of a conclusory allegation and thereby render it non-conclusory." Citizens United v. Schneiderman, 882 F.3d 374, 384 (2d Cir. 2018). "Those magic words will only make otherwise unsupported claims plausible when 'the facts are peculiarly within the possession and control of the defendant or where the belief is based on factual information that makes the inference of culpability plausible.'" Id. at 384–85 (quoting Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010)). Kossivi states, "upon information and belief," that she "was not the only female officer subjected to sexual harassment, exploitation, or hostile treatment within the DHS-NYPD assignments at Randall's Island and Ward's Island [sic]." But supporting this allegation does not require facts that are "peculiarly within the possession and control" of the City. Kossivi might have offered public police reports, press statements, or statements from officers regarding other incidents that have taken place on Randalls and Wards Island. But she does not do so.

Kossivi further claims that "[o]fficers . . . were aware of a pattern of female officers being harassed . . ." and that "[s]upervisory personnel knew of these issues [and] discussed them openly among themselves" without citing to specific instances of harassment or discussions of harassment taking place. Furthermore, officers and supervisors are alleged to have "failed to discipline offending officers or implement safeguards." But, outside of Martinez — who is alleged to be "former" captain (FAC ¶ 6) — Kossivi has not shown that there are other "offending officers" who engaged in similar conduct. Nor has she shown that there are a lack of safeguards and that officers and supervisors have failed to "implement" them.

Despite the gravity of the accusations, on a motion to dismiss this Court may only consider the "well-pleaded, nonconclusory factual allegation of parallel behavior [] to determine whether it gave rise to a 'plausible suggestion of conspiracy." Iqbal, 556 U.S. at 662 (citing Twombly, 550 U.S. at 565–66). Without alleging specific instances, this Court cannot reasonably infer that constitutional violations are "so manifest as to imply the constructive acquiescence of senior policy-making officials."

Furthermore, Kossivi has not provided any factual details that would support an inference that City policymakers knew of Martinez's, Hines's, or Patel's unconstitutional conduct or of unconstitutional conduct targeted at other female officers within the DHS-NYPD assignment at Randalls and Wards Island. "[A] plaintiff can prevail against a municipality by showing that the policymaking official was aware of the employee's unconstitutional actions and consciously chose to ignore them." Jones v. Town of East Haven, 691 F.3d 72, 81 (2d Cir. 2012). Instead, the plaintiff merely states that "because the conduct of the City's policymakers was reckless, willful, and in conscious disregard of her rights," she is entitled to damages. (FAC ¶ 40.) While Kossivi did file a police report about Martinez's conduct, she does not allege that any policymaking official was aware of this report or that it indicated a pattern and practice of similar conduct taking place to female police officers on Randall's Island. Kossivi also asserts that the City failed to take reasonable steps to "prevent or remedy the hostile work environment and sexual abuse," and that this "amounted to deliberate indifference to Plaintiff's constitutional rights and proximately caused the harm she suffered." (FAC ¶ 38.) But the Second Circuit has held that "deliberate indifference requires a showing that the official made a conscious choice, and was not merely negligent." Jones, 691 F.3d at 81 (citing Cash v. County of Erie, 654 F.3d 324, 334 (2d Cir. 2011); Vann v. City of New York, 72 F.3d 1040, 1049 (2d Cir. 1995)). The

complaint does not point to a single policymaking official that made a conscious choice to not take reasonable steps to "prevent or remedy the hostile work environment and sexual abuse."

Kossivi does argue, citing to Lucente v. County of Suffolk, 980 F.3d 284 (2d. Cir. 2020), that "where a practice of unconstitutional conduct is sufficiently persistent and widespread, actual notice by a formal policymaker need not be proven." (ECF 36 at 15.) But Lucente does not provide an apt comparison.

In Lucente, six plaintiffs brought claims against Suffolk County because of a pattern and practice of allowing sexual harassment and abuse by a sergeant at a corrections facility. 980 F.3d at 288. The Lucente plaintiffs further alleged that a lieutenant was made aware of the sergeant's sexual assault of at least one plaintiff, another plaintiff filed a formal complaint following her assault, a sexual harassment officer knew of the sergeant's sexual harassment of inmates, and the sexual harassment officer reported this conduct to her supervisor (a lieutenant) multiple times. Id. at 306–07. On these facts, the Second Circuit held that there could be a triable issue of fact as to "whether the pattern of unconstitutional conduct by [the sergeant] and alleged inaction by supervisory personnel was sufficiently persistent and widespread, to allow an inference of policymaker acquiescence that would trigger Monell liability." Id. at 307. Although the lack of notice to a formal policymaker did not prevent a triable issue of fact on Monell liability, Judge Bianco, writing for the Lucente court, acknowledged that while a municipal policy can be inferred from omissions — such as acquiescing in a pattern of illegal conduct — "such a policy cannot be inferred from the failure of those in charge to discipline a single police officer for a single incident of illegality." Id. at 306.

While Martinez may have engaged in multiple instances of wrongful conduct directed at Kossivi, he is a single officer. Hines and Patel may have known about the illegality and directly participated in it, but there is no indication they participated in similar conduct with other victims. Thus, the FAC fails to plausibly allege "policymaker acquiescence" to trigger Monell liability on the part of the City from illegal conduct by three officers against Kossivi.

Kossivi's section 1983 claim against the City will therefore be dismissed.[2]

## IV. The Section 1981 Claims (Count I) Against Movants Will Be Dismissed.

Kossivi alleges that "Defendants violated Section 1981 by subjecting her to a pattern and practice of discrimination and hostile work environment based on race, ethnicity and national origin. The hostile work environment to which she was subjected was so severely permeated with discriminatory intimidation, sexual harassment, ridicule and insults that the terms and conditions of employment were altered." (FAC ¶ 25.)

To establish a section 1981 claim, a plaintiff must allege facts supporting the following elements: "(1) the plaintiff is a member of a racial minority; (2) an intent to discriminate on the basis of race by the defendant; and (3) the discrimination concerned one or more of the activities enumerated in the statute (i.e., make and enforce contracts, sue and be sued, give evidence, etc.)." Mian v. Donaldson, Lufkin & Jenrette Sec. Corp., 7 F.3d 1085, 1087 (2d Cir. 1993).

"[Section] 1981 does not provide a separate private right of action against state actors." Duplan v. City of New York, 888 F.3d 612, 621 (2d Cir. 2018). Instead, "the express cause of action for damages created by § 1983 constitutes the exclusive federal remedy for

[2] To the extent that Count II also purports to be a section 1983 action against all defendants, it also will be dismissed for failure to plausibly allege Monell liability.

violation of the rights guaranteed in § 1981 by state governmental units." Jett v. Dallas Independent School District, 491 U.S. 701 (1989); see also Duplan, 888 F.3d at 619 (2d Cir. 2018) (holding that Jett was not "implicitly overruled by 1991 amendments to the Civil Rights Act").

While Kossivi alleges that she is a member of a racial minority, (see FAC ¶ 4), she has not plausibly alleged that Hines and Patel or the City intended to discriminate against her based upon racial animus. Nowhere is it alleged that the sexual misconduct they engaged in or the indifference to such conduct was motivated by Kossivi's race. Race is mentioned only in the first paragraph and the paragraph alleging a section 1981 count against defendants. (See FAC ¶ 1 ("This is an action to remedy discrimination based on race, ethnicity, national origin, and gender, and an unlawful and hostile work environment pursuant to [section 1981 and the New York State Constitution.]"), ¶ 25 ("Defendants violated Section 1981 by subjecting Plaintiff to a pattern and practice of discrimination and hostile work environment based on race, ethnicity and national origin."))

Because the FAC fails to plausibly allege facts showing discrimination based upon race, it fails to state a section 1981 claim against Hines, Patel, or the City.

## V. The Court Will Limit the New York State Human Rights Law and New York City Human Rights Law Claims (Counts IV and V).

### A. Supplemental Jurisdiction Over the State and City Claims Against the City Will Be Exercised.

Because the federal law claims against the City have been dismissed, this Court must consider whether to exercise supplemental jurisdiction over plaintiff's NYSHRL and NYCHRL claims that are asserted against the City. Movants urge the Court to decline to

exercise supplemental jurisdiction. (ECF 35-1 at 6.) Plaintiff argues that the movants' position is premature and without merit. (ECF 36 at 21.)

"Under 28 U.S.C. § 1367(a), federal courts have supplemental jurisdiction to hear state law claims that are so related to federal question claims brought in the same action as to form part of the same case or controversy under Article III of the United States Constitution. A state law claim forms part of the same controversy if it and the federal claim derive from a common nucleus of operative fact." Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc., 373 F.3d 296, 308 (2d Cir. 2004) (internal quotation marks removed) (quoting Cicio v. Does, 321 F.3d 83, 97 (2d Cir. 2003) (vacated on other grounds)). "This is so even if the state law claim is asserted against a party different from the one named in the federal claim." Id. at 308 (citing 28 U.S.C. § 1367(a) (2000) & Kirschner v. Klemons, 225 F.3d 227, 239 (2d Cir. 2000)). As Briarpatch makes plain, when a federal claim is dismissed against one, but not all, defendants, the Court is permitted but not required to exercise supplemental jurisdiction over remaining state law claims against the dismissed defendant. 373 F.3d at 308 ("The fact that the district court has the power to hear these supplemental claims does not mean, of course, that it must do so."); see Kaplan v. County of Orange, 528 F. Supp. 3d 141, 161 n.6 (S.D.N. Y. 2021) (Karas, J.).

In deciding whether to exercise supplemental jurisdiction over state law claims, "district courts should balance the values of judicial economy, convenience, fairness, and comity — the 'Cohill factors.'" Klein & Co. Futures, Inc. v. Board of Trade of City of New York, 464 F.3d 255, 262 (2d Cir. 2006) (citing Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988)). In the ordinary case, the discretionary factors "'will point toward declining jurisdiction over the remaining state-law claims.'" In re Merrill Lynch Ltd. Partnerships Litigation, 154 F.3d 56, 61 (2d Cir. 1998) (quoting Cohill, 484 U.S. at 350 n.7).

The interests of judicial economy and convenience favor exercising jurisdiction over the NYSHRL and NYCHRL claims. This Court has supplemental jurisdiction over those claims insofar as they are alleged against Hines and Patel, for whom federal claims have survived. Discovery on those claims will proceed regardless. It would be wasteful and inconvenient for overlapping claims against the City to proceed in a state court.

Fairness is not a significant factor in the exercise of supplemental jurisdiction in this case. No time or effort has been expended on the state and city law claims beyond the filing of the FAC and the briefing of the motion to dismiss. On the other hand, the Court has acquired no special familiarity with the case that will be lost by declining to exercise supplemental jurisdiction.

Comity is also not a significant factor. In the interest of comity, it is generally preferable to avoid "[n]eedless decisions of state law." United Mine Workers of America v. Gibbs, 383 U.S. 715, 726 (1966); see also Harris v. NYU Langone Med. Ctr., 2014 WL 941821, at *2 (S.D.N.Y. Mar. 11, 2014) (Abrams, J.) (noting that the city law "has a lower threshold of proof than its federal counterparts and has been applied primarily at the intermediate appellate level of the state courts, with limited opportunity for the New York Court of Appeals to construe it"), aff'd, 615 F. App'x 49 (2d Cir. 2015). But this Court cannot escape adjudicating the NYSHRL and NYCHRL claims against the two individual defendants as to whom a federal claim has survived. Because this Court will be required to adjudicate the NYSHRL and NYCHRL claims against two of the three movants, adjudicating the claim against the third movant, the City, presents no additional hurdle.

Thus, the Court will exercise supplemental jurisdiction over the remaining NYSHRL and NYCHRL claims against the City.

B. The NYSHRL and NYCHRL Claims Do Not Plausibly Allege a Violation Based Upon Race, Ethnicity, or National Origin.

Plaintiff alleges that defendants subjected her to a hostile work environment — Count IV — and to sex discrimination, sexual harassment, and quid pro quo harassment — Count V — in violation of the NYSHRL and NYCHRL. Defendants do not dispute that Counts IV and V state claims for relief based on sex and gender. (See ECF 35-1 at 12–13.) But they do urge that Kossivi fails to state a claim that she was subjected to a hostile work environment, discrimination, or disparate treatment based upon her race, ethnicity, or national origin. (Id.)

Therefore, to the extent that Counts IV and V are based on sex and gender, the NYSHRL and NYCHRL claims will survive. The only remaining issue is whether Counts IV and V state claims for a violation of the NYSHRL and NYCHRL based on race, ethnicity, or national origin.

As stated previously, race is not mentioned in the complaint apart from the first paragraph and the paragraph alleging a section 1981 count against defendants. The same is true of ethnicity and national origin. Outside of the conclusory statements in those two paragraphs, nowhere is it alleged that the hostile work environment is based upon Kossivi's race, ethnicity, or national origin. Nor is there any allegation that Hines, Patel or the City discriminated in any way against Kossivi based upon her race, national origin, or ethnicity.

Therefore, Counts IV and V be dismissed to the extent that they are based on plaintiff's race, ethnicity or national origin; otherwise, they will stand.

CONCLUSION

The motion of Hines and Patel to dismiss the section 1983 claim against them is DENIED. The motion of the City to dismiss all section 1983 claims against it is GRANTED. The motion of Hines, Patel, and the City to dismiss the section 1981 claim is GRANTED. The Court dismisses only so much of Counts IV and V as alleges a hostile work environment or discrimination based upon race, ethnicity, or national origin.

Under Rule 4(m), Fed. R. Civ. P., "[i]f a defendant is not served within 90 days after the complaint is filed, the court — on its own or after notice to the plaintiff — must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Because more than 90 days have elapsed since the complaint was filed and plaintiff has not filed a motion to extend the Rule 4(m) time limit, the Court will dismiss all claims against John and Jane Doe defendants unless, within fourteen days of this Order, there is a showing of "good cause for the failure." Rule 4(m).

The parties shall confer and submit a Case Management Plan and proposed Scheduling Order within fourteen days of this Order.

The Clerk is directed to terminate the motion. (ECF 35.)

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 5, 2026